Good morning. May it please the Court, my name is Andrew Packard and I represent Plaintiff and Appellant, the California Sportfishing Protection Alliance in this matter. The defendants in their briefs have, I think, badly conflated two separate requirements of the Clean Water Act, Section 1365 and Section 1319. I'd like to speak briefly to the requirements of each and then talk about why neither of these preclusive bars apply to the case. What Appellant is asking for here is a simple, plain reading of Section 1365b1b, which states that in order for the prior pending action to be preclusive of the citizen suit enforcement, the state action must be brought to, quote, require compliance with the same standard limitation or order, unquote, as the one at issue in the citizen enforcement action. And that assessment is made at the time the citizen has filed the complaint. And the means by which the Court is to determine whether the prior pending action involves the same standard limitation or order, at least under the Connecticut Fund case, is to look to the pleadings. It's the simplest place to look. If you look at the pleadings in this particular case, you'll see that the prior action by the state involved state hazardous waste claims, some air violations, some labor code violations, but it had nothing to do with the Clean Water Act. There are no claims brought in the prior proceeding that were brought under the Clean Water Act, and it is, I think, a foregone conclusion that the action, as it was framed in the pleadings themselves, was not brought to require compliance with any part of the Clean Water Act, much less the general industrial stormwater permit. And the case law has reinforced that to interpret the diligent prosecution standard to require that that prior pending action had been calculated to require compliance and, indeed, be capable of requiring compliance with that same standard limitation or order. What if we find it wasn't calculated, but it was capable? I don't think that the Court could find that it was capable simply by virtue of the addition of, you're talking about the language in the 2008 consent orders. I will admit that the consent orders do make one passing reference to maintaining drainage, but even if they did that, that would not bring them into full compliance with the Clean Water Act. The only other reference in those consent orders is another sort of passing reference that relates to, functions sort of like obey all other laws. Comply with, right, comply with everything that's out there. Comply with everything else, that's correct. So would it be sufficient if we found that there was really an effort, even if it wasn't the original effort at the time that the action was initiated, that after the fact that there was an effort to require compliance with the Clean Water Act, I certainly understand that's not your position about what happened factually here, but would that be enough? I think that would be a stretch to conclude and I think there's two interesting facts that would undermine such a conclusion. One is that the, whether those consent orders were capable of requiring compliance with the Clean Water Act has been shown that they weren't because you've got the regional board, the lead agency under the Clean Water Act, looking at them two years later and finding violations. And I think it's the Friends of Milwaukee River's case which makes it very clear that if you've got an instance in which the Clean Water Act is continuing to be violated after the prior pending actions, consent orders, then it's obvious that they weren't capable of requiring compliance because compliance didn't take place. Thank you. So our central contention is that the prior actions brought by the DA, the Butte County DA and the State of California related to completely unrelated claims and as a result were not capable of bringing about compliance with the Clean Water Act. The two-part test set forth in the Connecticut Fund case, as I mentioned, talks first about a comparison of the pleadings to determine really the character of the action brought prior to the citizen suit action. And in this regard, as I mentioned, comparison of the pleadings is absolutely critical. That approach was followed in the Sierra Club v. City and County of Honolulu case and again in the more recent case which we submitted to the court post-briefing. What the District Court did here was really ignore the plain language of the statute and assess the state's actions after the filing of the citizen suit complaint relating to a petition to revoke probation, which is simply wrong. All the case law says that the assessment of whether an action has been commenced must be made at the time that the citizen suit complaint was filed, which in this instance would be May of 2010. And so another aspect of the District Court's error relates to the fact that the sole evidence that the District Court pointed to as diligent prosecution related to the petition to revoke probation, which occurred more than a year after the filing of the citizen suit complaint. Was there anything more in the record that I missed about that? Was there correspondence or saber-rattling that led up to the eventual filing that happened a year later? It's my understanding that there was repeated noncompliance over the three years leading up to the 2011 petition. I don't know much more else than that. I'm just wondering whether the fact that that was documented indicates that the State hadn't turned a blind eye, but that was actually monitoring compliance with the earlier order, the original settlement agreement. It was monitoring compliance, yeah. And what's your response to that, about whether or not that does or does not rise to the level, ring the bell, of showing that they are indeed monitoring and insisting upon compliance? Well, as an initial matter, to the extent that it occurred after the filing of the citizen's complaint, it's irrelevant. I'm talking about earlier. Earlier. That's what I'm talking about, the I can't speak to that issue, Your Honor. I don't know the background of their particular suit. Okay. In terms of how closely they were monitoring compliance. I just don't know. All right. I do know that the Butte County D.A. filed an amicus brief herein stating that their action was not brought under the Clean Water Act, not settled under the Clean Water Act, never cited any authority for the settlement under the Clean Water Act. And they have opined in the amicus brief that citizen suit enforcement in this instance would not be duplicative or cause interference the way the statute was written to try to avoid. So in closing, I'd like to, with respect to the Friends case, the Connecticut Fund case, they have adopted a practical effect approach. What does the consent agreement or the prior case do with respect to causing actual compliance to occur? And briefly, I'd like to, because my opposing counsel has briefed the 1319G preclusion, I just wanted to very briefly say that that bar does not apply to cases such as the one here, because for 1319G to apply, you have to have had an administrative penalty proceeding and the assessment of an administrative penalty. And neither the proceeding nor the assessment of the penalty occurred in this case. So I'd like to reserve the balance of my time. You may. Thank you, Your Honor. Good morning, Your Honor. May it please the Court. I'm Therese Cannata and I represent the respondents in this matter. I would like to address the District Court's order and to request, obviously, seek that it be not at the time the citizen's action was commenced, which was on May 17, 2010, was there an ongoing State action and was it being diligently prosecuted? State action for what? Of course there was an ongoing State action, but it seems to me that it's almost entirely about other things. It's about dust in the air, it's about dealing with lead-painted surfaces with a blowtorch, it's about all kinds of things. And oh, by the way, it's about discharges into waters of the State, not Federal navigable waters. That's kind of a tiny piece of it, it seems to me. So what does the State proceeding have to be about, in your view, to preclude the citizen suit? Well, it's in two parts. I'm not asking this Court to suspend disbelief and to suggest that the criminal complaint was brought as a comparable Clean Water Act case. I understand that, and I think it would be nonsensical to make an argument that there are, there is indeed, I believe, one or two water-related charges, but it was principally a charge related to a concern that there was hazardous waste on the premises, and that's a subject of other litigations. What happened after that, though, is what propels us to look at the question here today, what brings us and what really motivated the motion to dismiss. What happened is a global, and this is on October 16, 2008, a settlement was made of civil and criminal actions. And that settlement required that a number of penalties be imposed and that the company would be placed under and, by the way, I should back up one step. There are two things that happened in October of 2008 that are very important for this Court to know. On October 1, 2008, the DTSC consent orders at the regulatory level attach, meaning those orders are signed and they're attached, and everything in those orders becomes binding on the company and Mr. Scott. And that includes, and I'll go back and review that language once more for the Court, includes oversight by the Department of Toxic Controlled Substances, it includes oversight of all stormwater manners. And that is, I believe, it are at the record citation to the consent order would be, and I think the Penn 63 of the record. The section 5.2.1.3 of each of the consent orders says maintain that DTSC has oversight, this is a state agency, has regulatory oversight that the respondents agree to maintain drainage control that meets at a minimum the waste discharge requirements for discharges of stormwater associated with industrial activities as adopted by the California State Water Quality Control Board. That is the state authorized Clean Water Act enforcement arm of the State of California. In addition, on October 16, 2008, Mr. Scott and his family trust and the businesses are placed under a global settlement agreement that resolves civil and criminal claims. And that includes the payment of $181,000 in costs to the state agency and other agencies. It includes a $500,000, sorry, a $700,000 fine, 500 of which was suspended, 200 was paid. And it involved the DTSC orders being a condition of probation. And the DTSC orders then are incorporated by reference into the global settlement agreement. As of now we fast forward, and now they're going through this, I believe in January of 2010, the state water, I believe an independent contractor engaged by EPA does an inspection of the sites and finds minor violations. And that's very important for the court to understand because there's a certain implication that there's horrible things going on at this site. The State Water Resources Board, the State Water Board found minor problems issued a notice of violation on June 1, 2010, and those were remedied within the 60-day period under the general supervision of EPA. And that's a bar to a citizen suit. It is, Your Honor. In fact, consent orders have been found in numerous cases that we cited to the court to be ongoing . . . well, you have to look contextually. It's not an automatic. And I'm aware of Ninth Circuit authority which says, no, it wasn't automatic. There might have been a consent order in place, but it wasn't being enforced. In this instance, there was continuing five-year probation and consent orders, which, by the way, are indeterminate. So you understand, the consent orders don't go by five years this year. It goes when the Department of Toxic Controlled Substances says you're done, and they're not done yet. So the State agency is still very much engaged and has oversight on that. I think what Justice . . . Judge Burrell was looking at is that there is no lack of oversight and diligent prosecution going on. And I believe in . . . But the statute seems to require that it be oversight and enforcement of the same standard. It is, Your Honor. So your view is that this section of the consent decree, even though that was not the starting point of the State litigation, ended up sweeping in this Clean Water . . . specific Clean Water Act sections that are alleged in this complaint. That has to be your argument. No, it precisely is, is that it is the effect. It is what . . . As of March 17, 2010, when the citizens' action was commenced, the question is why are they there? Was a citizens' action necessary to ensure compliance with the Clean Water Act? And I believe at least during a discovery proceeding, and I think it's part of the record, one magistrate noted that there's a bit of piling on by State agencies and now the citizen enforcers. You have a very engaged local Butte County prosecutor, and he filed an amicus brief. He's never far away. You have the Department of Toxic Controlled Substances, which is the . . . Yeah, his amicus brief says the opposite of what you're saying, though. He says he didn't have any intention or effect of dealing with the specific things that this suit is about. Which is interesting, considering that in the same breath he filed a motion to revoke probation under the Clean Water Act. This is occurring as a bundle of contradictions at times. The Winner Declaration is interesting. She seems to say that she's not enforcing her own order. I don't know what to make of it because it's not factually true. We didn't have an opportunity in this case that was not discovery, but her deposition would have been very telling. She conducts annual inspections, including reviewing best management practices for stormwater and has done so every year of the DTSC order. I was actually very surprised. Again, her deposition wasn't taken, so I can't suggest to this Court and debate it other than to say it was quite an interesting note, considering she's sort of saying to the Court, I find two things contradictory actually. That the prosecutor is saying that he's not enforcing enough and DTSC is saying... Well, he's not saying he's not enforcing enough. They're enforcing something different. Nobody's saying they're not doing enough. They're doing something else. Including the plaintiffs. I think they're saying they're over here diligently doing X, Y, and Z and we want them to do D over here. Let me address that. Your Honor, you make a very, very good point and I want to make it very clear. The enforcement is not over here and different. It is Clean Water Act enforcement and it's in the Department of Toxic Controlled Substances order. It says, and again, it doesn't just tangentially align to stormwater compliance. It specifically aligns to it. It's not just, I'm going to look at surface water. It says the surface water as pertaining to the discharges under the stormwater plans and general permit of the State of California. That's very, very specific. If the respondents were to be violating, if they were violating the general permit of the State of California or violating the Clean Water Act, they would be in violation of the consent order. Numerous cases have held that consent orders do constitute ongoing diligent prosecution while they are in place. I just don't think I heard an answer to my question about, that's okay, but just to back up, because you're getting questions from all three of us, but in light of the winner declaration, how do I find that this is being . . . it is . . . the State Water Resources Control Board issued an NOB, which was responded to, and the . . . I don't have a direct answer to that. If I had discovery, I would probably do it. Maybe it's a summary judgment motion. I want to be honest with the court. Thank you. I appreciate your candor. Would the original case filed by Butte County in 2007, absent the probation period and consent decree, have been a bar to this citizen suit if it were still ongoing? That's a hard question to answer, Your Honor. I was not criminal counsel in that. The criminal defense attorney waived the preliminary hearing, which was extraordinary in my view. I believe, ultimately, it might have gone to that direction, but it pled basically from the complaint to the settlement. So I can't . . . I don't have enough facts to say so. The face of a complaint is not necessarily the measure of how . . . Well, that's what I was going to ask you. At least with respect to the proceedings that ultimately led to the consent decree, why wouldn't we do as the plaintiff is asking and look at the scope of the enforcement by looking at what the pleadings were initially? What were they trying to accomplish? I think the reason that you would not want to rest entirely on the complaint-to-complaint moment is because it is a period of time from 2008 through May 17, 2010, which I would call the commencement of the citizen's enforcement. I think that's the proper window to put the analysis in. And in that window, we have the infusion of the settlement agreement and the consent order. And that consent order becomes the action. So you move past the complaint and you now have a context of an ongoing consent order that directly ties to the Clean Water Act and to the stormwater violations. As I said at the beginning, I do not contend that the complaint . . . in this action and the complaint filed by the district attorney, I would agree they do not match up. But what does match up is the consent order that is part of the contextual pattern of facts that exist, which would suggest there need not have been a citizen's enforcer on the day that this action was brought on May 17 because there was an ongoing probationary order and an ongoing consent order in place, which encompassed Clean Water Act enforcement. Thank you, Your Honor. Counsel, I have a question. Could they have enforced the Clean Water Act violations that your client is concerned about under the existing order? I understand your position is they aren't doing it, but could they? I don't think so, Your Honor. And that's partly because of the different turfs, if you will. DTSC, the California Department of Toxic Substance Control, addresses hazardous waste problems and imminent danger to the public health. The lead agency here should be the regional and state boards. They're the ones charged with enforcing, developing, and modifying general industrial stormwater permits. But they are the ones dealt with in the consent decree in this paragraph about maintaining drainage control because, at least they're referred to, they agree to maintain standards as adopted by the California State Water Quality Control Board. So is that the right agency at least? It is the right agency, Your Honor. If I could back up a moment and just talk about these pollution laws more generally. Hazardous waste violations are going to deal with a certain set of issues relating to public health and the migration of hazardous substances from a particular facility to the public. Stormwater cases are going to deal with the migration of toxic and non-toxic substances off of the site by virtue of stormwater falling on the site and carrying it off. There's going to be a small amount of overlap, and it shouldn't surprise the Court, I suppose, that they would mandate in the consent order that you need to comply with your general industrial stormwater permit to the extent that it is going to help you restrict the migration of hazardous materials off of the facility. But that reference in the consent order alone is not going to bring them into compliance with the general industrial stormwater permit. It doesn't reference anything injunctively as to what they need to do to come into full compliance. They need to simply make sure that at a minimum they're complying with the discharge requirements of the general permit, which is only a small portion of what all of the requirements of the general permit relate to. Does that answer your question? Well, it probably does, but I may not understand it fully. I guess what I'm unclear about, let's leave aside now the question of what you're measuring against what and take for the moment that we are going to look at the consent decree. And I guess what I'm not sure about is the following. If they do absolutely everything that is set out in that paragraph in the consent decree, will they also be doing everything that you are telling them has to be done in the suit? Absolutely not, Your Honor. There's a number of claims in our actions relating to the insufficiency of the stormwater pollution prevention plan, the insufficiencies of the monitoring and reporting plan, the insufficiencies of the best management practices employed at the facility. And absolutely none of those problems, which our suit addresses, are addressed by that consent order. And to answer your question directly, they could comply in full with that consent order and still be violating the provisions of the Clean Water Act and the general permit that we're seeking to address. Unless the Court has further questions, I'd like to respond more directly to some of the points made by my opponent. DTSC does not have oversight for stormwater matters, as a general proposition. And DTSC's oversight of its consent orders does not change that fact. So when my colleague, Ms. Cannata, stated that DTSC's sort of got this under control, they've got it under control to the extent that they're monitoring, and I'll admit, vigorously and diligently, monitoring the compliance with their consent order. But I think you have to go back to what the consent order tries to address and what the citizen action tries to address. There's nothing specifically mandated by those consent orders that would bring the defendant into compliance. And it's for that reason that we look to the cases that say that the prior pending action needs to be capable of requiring compliance and, in good faith, calculated to do so. That's the Friends of Milwaukee case. With respect to the regional board's later investigation in 2010 of the defendant's facilities, it did not find minor violations. It issued a notice of violation indicating that, in the regional board's view, the defendants were still violating the general permit in 2010. And, again, I ask, if you look at the Friends of Milwaukee River case, the court states that there can be no preclusive effect and it can't be found that the prior action was capable or calculated to require compliance when, in fact, you've got the lead agency coming along two years later and saying they're in violation. Obviously the consent orders didn't cause them to be in compliance with the general permit. And those are all my comments.
judges: Tunheim, Graber, Christen